STEPHEN W. MANNING, OSB # 013373
stephen@innovationlawlab.org
smanning@ilgrp.com
JORDAN CUNNINGS, OSB # 182928
jordan@innovationlawlab.org
NELLY GARCIA ORJUELA, OSB #223308
nelly@innovationlawlab.org
INNOVATION LAW LAB
333 SW 5th Ave., Suite 200
Portland, OR 97204-1748
Telephone: +1 503-922-3042

Attorneys for Petitioner

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

### Portland Division

| | |
|---|---|
| Y- Z- L- H-, an adult, | |
| Petitioner, | Case No. 25-965 |
| v. | Agency No. AXXX-XXX-204 |
| DREW BOSTOCK, Seattle Field Office Director, Immigration and Customs Enforcement and Removal Operations ("ICE/ERO");TODD LYONS, Acting Director of Immigration Customs Enforcement ("ICE"); U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; KRISTI NOEM, Secretary of the Department of Homeland Security ("DHS"); U.S. DEPARTMENT OF HOMELAND SECURITY; and PAMELA BONDI, Attorney General of the United States, | **PETITION FOR WRIT OF HABEAS CORPUS**<br><br>ORAL ARGUMENT REQUESTED<br><br>Expedited Hearing Requested |
| Respondents. | |

## INTRODUCTION

1.      La Familia Michoacana is a ofearsome one of the most infamous cartels that operates across large parts of Mexico using the rule of violence instead of the rule of law. In Mexico in 2023, La Familia Michoacana threatened to kill Y-Z-L-H. Giving warning from friends that the La Familia Michoacana was out to get him, Y-Z-L-H- came to the United States to apply for asylum.

2.      Y-Z-L-H- was paroled into the United States on July 21, 2023, nearly two years ago, by Respondents; he then applied for asylum before the U.S. immigration authorities almost one year ago.  Respondents commenced removal proceedings against him in immigration court, entitling him to present his asylum claim with the due process rights under 8 U.S.C. § 1229a. Yet, in a deceptive sleight of hand Respondents now seek to eject Y-Z-L-H- from his own asylum case, detain him, and transfer him away from the District of Oregon so that they can rapidly deport him under an entirely separate and inapposite law, 8 U.S.C. § 1225. Respondents do so based not on Y-Z-L-H-'s personal circumstances or individualized facts but because of Respondents' interpretation of President Trump's whim and categorical determination that, the Fifth Amendment notwithstanding, noncitizens are not entitled to due process.[1]

3.      But Respondents cannot evade the law so easily. The law which they purport to rapidly remove Y-Z-L-H- does not authorize their actions and the U.S. Constitution requires the Respondents provide at least the rights available to him when he filed his application for asylum.

---

[1] *See, e.g.,* NBC News, Meet the Press interview of President Donald Trump (May 4, 2025), https://www.nbcnews.com/politics/trump-administration/read-full-transcript-president-donald-trump-interviewed-meet-press-mod-rcna203514 (in response to a question whether noncitizens deserve due process under the Fifth Amendment, President Trump replied "I don't know. It seems—it might say that, but if you're talking about that, then we'd have to have a million or 2 million or 2 million trials.").

4.     Accordingly, to vindicate Petitioner's rights, this Court should grant the instant petition for a writ of habeas corpus. Y-Z-L-H- asks this Court to find that Respondents' attempts to detain, transfer, and deport him are arbitrary and capricious and in violation of the law, and to immediately issue an order preventing his transfer out of this district.

## JURISDICTION

5.     This action arises under the Constitution of the United States and the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 et. seq.

6.     This court has subject matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I, § 9, cl. 2 of the United States Constitution (Suspension Clause).

7.     This Court may grant relief under the habeas corpus statutes, 28 U.S.C. § 2241 et. seq., the Declaratory Judgment Act, 28 U.S.C. § 2201 et. seq., the All Writs Act, 28 U.S.C. § 1651, and the Immigration and Nationality Act, 8 U.S.C. § 1252(e)(2).

## VENUE

8.     Venue is proper because Petitioner is in Respondents' custody in Portland, Oregon. Venue is further proper because a substantial part of the events or omissions giving rise to Petitioner's claims occurred in this District, where Petitioner is now in Respondent's custody. 28 U.S.C. § 1391(e).

9.     For these same reasons, divisional venue is proper under Local Rule 3-2.

## REQUIREMENTS OF 28 U.S.C. §§ 2241, 2243

10.     The Court must grant the petition for writ of habeas corpus or issue an order to show cause (OSC) to the Respondents "forthwith," unless the petitioner is not entitled to relief. 28 U.S.C. § 2243. If an OSC is issued, the Court must require Respondents to file a return

"within three days unless for good cause additional time, not exceeding twenty days, is allowed."
*Id.*

11.    Courts have long recognized the significance of the habeas statute in protecting
individuals from unlawful detention. The Great Writ has been referred to as "perhaps the most
important writ known to the constitutional law of England, affording as it does a swift and
imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391,
400 (1963).

12.    Petitioner is "in custody" for the purpose of § 2241 because he is arrested and
detained by Respondents.

## PARTIES

13.    Y-Z-L-H- ("Petitioner") is a 24-year-old citizen of Mexico. He is a resident of
Newport, Oregon, and is present within the state of Oregon as of the time of the filing of this
petition.[2]

14.    Respondent Drew Bostock is the Field Office Director for the Seattle Field
Office, Immigration and Customs Enforcement and Removal Operations ("ICE"). The Seattle
Field Office is responsible for local custody decisions relating to non-citizens charged with being
removable from the United States, including the arrest, detention, and custody status of non-

---

[2] Petitioner seeks leave to proceed anonymously because his public identification creates a
retaliatory physical harm risk because his status as an asylum seeker in the United States and the
nature of his claim is sensitive and highly personal. *See Does I thru XXIII v. Advanced Textile
Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000). The Ninth Circuit has identified several different
situations in which parties have been permitted to proceed under a fictitious name, including "(1)
when identification creates a risk of retaliatory physical or mental harm, . . . ; (2) when anonymity
is necessary 'to preserve privacy in a matter of sensitive and highly personal nature,' . . . ; and (3)
when the anonymous party is 'compelled to admit [his or her] intention to engage in illegal
conduct, thereby risking criminal prosecution.'" *Id.* (collecting cases; internal citations omitted).
The Petitioner would provide his identity to the Respondents and the Court under seal.

citizens. The Seattle Field Office's area of responsibility includes Alaska, Oregon, and Washington. Respondent Bostock is a legal custodian of Petitioner.

15.     Respondent Todd Lyons is the acting director of U.S. Immigration and Customs Enforcement, and he has authority over the actions of respondent Drew Bostock and ICE in general. Respondent Lyons is a legal custodian of Petitioner.

16.     Respondent Kristi Noem is the Secretary of the Department of Homeland Security (DHS) and has authority over the actions of all other DHS Respondents in this case, as well as all operations of DHS. Respondent Noem is a legal custodian of Petitioner and is charged with faithfully administering the immigration laws of the United States.

17.     Respondent Pamela Bondi is the Attorney General of the United States, and as such has authority over the Department of Justice and is charged with faithfully administering the immigration laws of the United States.

18.     Respondent U.S. Immigration Customs Enforcement is the federal agency responsible for custody decisions relating to non-citizens charged with being removable from the United States, including the arrest, detention, and custody status of non-citizens.

19.     Respondent U.S. Department of Homeland Security is the federal agency that has authority over the actions of ICE and all other DHS Respondents.

20.     This action is commenced against all Respondents in their official capacities.

## LEGAL FRAMEWORK

21.     The Refugee Act of 1980, the cornerstone of the U.S. asylum system, provides a right to apply for asylum to individuals seeking safe haven in the United States. The purpose of the Refugee Act is to enforce the "historic policy of the United States to respond to the urgent

needs of persons subject to persecution in their homelands." Refugee Act of 1980, § 101(a), Pub. L. No. 96-212, 94 Stat. 102 (1980).

22.     The "motivation for the enactment of the Refugee Act" was the United Nations Protocol Relating to the Status of Refugees, "to which the United States had been bound since 1968." *INS v. Cardoza-Fonseca*, 480 U.S. 421, 424, 432-33 (1987). The Refugee Act reflects a legislative purpose "to give 'statutory meaning to our national commitment to human rights and humanitarian concerns.'" *Duran v. INS*, 756 F.2d 1338, 1340 n.2 (9th Cir. 1985).

23.     The Refugee Act established the right to apply for asylum in the United States and defines the standards for granting asylum. It is codified in various sections of the INA.

24.     The INA gives the Attorney General or the Secretary of Homeland Security discretion to grant asylum to noncitizens who satisfy the definition of "refugee." Under that definition, individuals generally are eligible for asylum if they have experienced past persecution or have a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion and if they are unable or unwilling to return to and avail themselves of the protection of their homeland because of that persecution of fear. 8 U.S.C. § 1101(a)(42)(A).

25.     Although a grant of asylum may be discretionary, the right to apply for asylum is not. The Refugee Act broadly affords a right to apply for asylum to any noncitizen "who is physically present in the United States or who arrives in the United States[.]" 8 U.S.C. § 1158(a)(1).

26.     Because of the life-or-death stakes, the statutory right to apply for asylum is robust. The right necessarily includes the right to counsel, at no expense to the government, see 8 U.S.C. § 1229a(b)(4)(A), § 1362, the right to notice of the right to counsel, see 8 U.S.C. §

1158(d)(4), and the right to access information in support of an application, see § 1158(b)(1)(B) (placing the burden on the applicant to present evidence to establish eligibility.).

27.    Noncitizens seeking asylum are guaranteed Due Process under the Fifth Amendment to the U.S. Constitution. *Reno v. Flores*, 507 U.S. 292, 306 (1993).

28.    Noncitizens who are applicants for asylum are entitled to a full hearing in immigration court before they can be removed from the United States. 8 U.S.C. § 1229a. Consistent with due process, noncitizens may seek administrative appellate review before the Board of Immigration Appeals of removal orders entered against them and judicial review in federal court upon a petition for review. 8 U.S.C. § 1252(a) *et seq*.

29.    In 1996, Congress created "expedited removal" as a truncated method for rapidly removing certain noncitizens from the United States with very few procedural protections. 8 U.S.C. § 1225(b)(1). Because there are few procedural protections, expedited removal applies narrowly to only those noncitizens who are inadmissible to the United States because they engaged in fraud or misrepresentation to procure admission or other immigration benefits, 8 U.S.C. § 1182(a)(6)(C), or who are applicants for admission without required documentation, 8 U.S.C. § 1182(a)(7). No other person may be subjected to expedited removal. 8 C.F.R. § 235.3(b)(1), (b)(3).

30.    Noncitizens subjected to expedited removal are ordered removed by an immigration officer "without further hearing or review." 8 U.S.C. § 1225(b)(1)(A)(i). That officer must determine whether the individual has been continuously present in the United States for less than two years; is a noncitizen; and is inadmissible because he or she has engaged in certain kinds of fraud or lacks valid entry documents "at the time of . . . application for admission." *See* 8 U.S.C. § 1225(b)(1)(A)(i), (iii) (citing 8 U.S.C. § 1182(a)(6)(C), (a)(7)).

31.     Otherwise, if the officer concludes that the individual is inadmissible under an applicable ground, the officer "shall," with simply the concurrence of a supervisor, 8 C.F.R. § 235.3(b)(7), order the individual removed "without further hearing or review unless the alien indicates either an intention to apply for asylum . . . or a fear of persecution." 8 U.S.C. § 1225(b)(1)(A)(i).

32.     Thus, a low-level DHS officer can order the removal of an individual who has been living in the United States with virtually no administrative process—just completion of cursory paperwork—based only on the officer's own conclusions that the individual has not been admitted or paroled, that the individual has not adequately shown the requisite continuous physical presence, and that the individual is inadmissible on one of the two specified grounds.

33.     Once a determination on inadmissibility is made, removal can occur rapidly, within twenty-four hours.

34.     Asylum is not an admission to the United States and an applicant for asylum, while they must be physically present in the United States to apply, need not apply for or seek admission to the United States. *Matter of V-X-*, 26 I&N Dec. 147 (BIA 2013).

35.     For those who fear return to their countries of origin, the expedited removal statute provides a limited additional screening. But the additional screening, to the extent it occurs, does not remotely approach the type of process and the rights available to asylum seekers receive in regular Section 240 immigration proceedings.

36.     An expedited removal order comes with significant consequences beyond removal itself. Noncitizens who are issued expedited removal orders are subject to a five-year bar on admission to the United States unless they qualify for a discretionary waiver. 8 U.S.C.§ 1182(a)(9)(A)(i); 8 C.F.R. § 212.2. Similarly, noncitizens issued expedited removal orders after

having been found inadmissible based on misrepresentation are subject to a lifetime bar on admission to the United States unless they are granted a discretionary exception or waiver. 8 U.S.C. § 1182(a)(6)(C).

37.    Expedited removal only applies to noncitizens who are inadmissible on one of two specified grounds: 8 U S.C. § 1182(a)(6)(C), which applies to those who seek to procure immigration status or citizenship via fraud or false representations, or § 1182(a)(7), which applies to noncitizens who, "at the time of application for admission," fail to satisfy certain documentation requirements. 8 U.S.C. § 1225(b)(1)(A)(1). If DHS seeks to remove noncitizens based on other grounds, they must afford the noncitizen a full hearing before an immigration judge. *See* 8 C.F.R. § 235.3(b)(1), (3).

38.    Immigration detention should not be used as a punishment and should only be used when, under an individualized determination, a noncitizen is a flight risk because they are unlikely to appear for immigration court or a danger to the community. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

## FACTUAL BACKGROUND

39.    Petitioner is a citizen of Mexico. He was born in 2000 in the state of Michoacan, Mexico.

40.    Petitioner was threatened with death in Mexico by a notorious cartel called La Familia Michoacana.

41.    On or about July 21, 2023, Petitioner came to the port of entry El Paso, Texas to seek asylum. Respondents paroled him into the United States, based on the individualized facts in his case, under 8 U.S.C. § 1182(d)(5) and released him from custody pursuant to the same statute.

42.    On or about July 24, 2023, Respondents commenced removal proceedings against Petitioner under 8 U.S.C. § 1229a in Portland, Oregon.

43.    Respondents alleged he was inadmissible to the United States under 8 U.S.C. § 1182(a)(7)(A)(i)(I) and commanded that he appear for a hearing on May 7, 2024 in the immigration court in Portland, Oregon.

44.    On information and belief, Petitioner regularly complied with and appeared for ICE check-ins.

45.    Petitioner applied for asylum before the Portland Immigration Court on July 17, 2024.

46.    On September 28, 2023, Respondents issued work authorization to Petitioner pursuant to 8 C.F.R. § 274a.12(c)(11) valid through July 19, 2025.

47.    On or about April 11, 2025, Respondents purported to revoke his parole through a mass, generic notification system.

48.    Petitioner appeared for his immigration court hearing on June 5, 2025. However, instead of allowing him to proceed with his asylum application, Respondents' moved to dismiss his case entirely and the immigration court dismissed the proceedings.  On information and belief, Respondents did not advise Petitioner that they sought to terminate his case to place him in expedited removal proceedings.

49.    After exiting the courtroom and while in the courtroom lobby, several ICE agents arrested Petitioner. They did not provide him any process or, even though a pro bono lawyer was available at the immigration court, access to counsel. The ICE agents did not offer him any opportunity to be heard prior to arresting and detaining him.

50.     On January 20, 2025, President Donald Trump issued several executive actions relating to immigration, including "Protecting the American People Against Invasion," an executive order (EO) setting out a series of interior immigration enforcement actions. The Trump administration, through this and other actions, has outlined sweeping, executive branch-led changes to immigration enforcement policy, establishing a formal framework for mass deportation. The "Protecting the American People Against Invasion" EO instructs the DHS Secretary "to take all appropriate action to enable" ICE, CBP, and USCIS to prioritize civil immigration enforcement procedures including through the use of mass detention.

51.     On January 21, 2025, Acting Deputy Secretary of DHS Benjamin Huffman issued for public inspection and effective immediately a designation expanding the scope of expedited removal to apply nationwide and to certain noncitizens who are unable to prove they have been in the country continuously for two years. On January 24, 2025, DHS published a Notice that expanded the application of expedited removal. Office of the Secretary, Dep't of Homeland Security, *Designating Aliens for Expedited Removal*, 15 Fed. Reg. 8139 ("January 2025 Designation"). The designation was "effective on" January 21, 2025.

52.     The January 2025 Designation expands the pool of noncitizens who can be subjected to the summary removal process substantially to include noncitizens who are apprehended anywhere in the United States and who have not been in the United States continuously for more than two years. *Id.* at 8140.

53.     The January 2025 Designation does not state that it applies to noncitizens who were in the United States before its effective date.

54.     On information and belief, Petitioner avers that Respondents concealed the basis for dismissal from the immigration court and Petitioner because the purpose was to divest him of his due process rights in his properly filed asylum application.

55.     On information and belief, Respondents did not afford Petitioner an opportunity to be heard before issuing him an expedited removal order, depriving him of due process.

56.     On information and belief, Respondents are using the immigration detention system, including extra-territorial transfer and detention, as a means to punish individuals for asserting rights under the Refugee Act.

57.     On information and belief, Petitioner has no criminal history.

**CLAIMS FOR RELIEF**

**COUNT ONE**
**Violation of Fifth Amendment Right to Due Process**
**Procedural Due Process**

58.     Petitioner restates and realleges all paragraphs as if fully set forth here

59.     The Due Process Clause of the Fifth Amendment to the U.S. Constitution prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. Amend. V. Due process protects "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693.

60.     Due process requires that government action be rational and non-arbitrary. *See U.S. v. Trimble*, 487 F.3d 752, 757 (9th Cir. 2007).

61.     While asylum is a discretionary benefit, the right to apply is not. 8 U.S.C. § 1158(a)(1). Any noncitizen who is "physically present in the United States or who arrives in

the United States (whether or not at a designated port of arrival . . .), irrespective of such [noncitizen's] status, may apply for asylum." *Id.*

62.    Because the denial of the right to apply for asylum can result in serious harm or death, the statutory right to apply is robust and meaningful. It includes the right to legal representation, and notice of that right, *see id.* §§ 1229a(b)(4)(A), 1362, 1158(d)(4); the right to present evidence in support of asylum eligibility, *see id.* § 1158(b)(1)(B); the right to appeal an adverse decision to the Board of Immigration Appeals and to the federal circuit courts, *see id.* §§ 1229a(c)(5), 1252(b); and the right to request reopening or reconsideration of a decision determining removability, *see id.* § 1229a(c)(6)-(7).

63.    Expedited removal, in contrast, severely limits the availability of such rights. Interviews occur on an exceedingly fast timeline; review of a negative interview decision by an immigration judge must occur within seven days of the decision. *See* 8 C.F.R. § 1003.42.

64.    While there is a right to "consult" with an attorney or another person about the credible fear interview process, *see* 8 U.S.C. § 1225(b)(1)(B)(iv) *and* 8 C.F.R. §§ 208.30(d)(4), 235.3(b)(4)(i)(B), (ii), the consultation "shall not unreasonably delay the process." The consultant may be "present" during the interview but may only make a "statement" at the end of the interview *if* permitted by the asylum officer. 8 C.F.R. § 208.30(d)(4). The immigrant subject to expedited removal may present evidence "if available", *id.*—often an impossibility given the fast timeline and the default of detention during the process. *See generally* Heidi Altman, et. al., *Seeking Safety from Darkness: Recommendations to the Biden Administration to Safeguard Asylum Rights in CBP Custody*, Nov. 21, 2024, https://www.nilc.org/wp-content/uploads/2024/11/NILC_CBP-Black-Hole-Report_112124.pdf (describing the obstruction

of access to counsel for people undergoing credible fear screenings in Customs and Border Protection custody).

65.    Review of a negative credible fear decision by an immigration judge is limited. "A credible fear review is not as exhaustive or in-depth as an asylum hearing in removal proceedings," and there is no right to submit evidence, as it may be admitted only at "the discretion of the immigration judge." Immigration Court Practice Manual, Chpt. 7.4(d)(4)(E). After denial of a credible fear interview and affirmance by a judge, removal is a near certainty; the immigrant is ineligible for other forms of relief from removal.

66.    In sum, applying for asylum in removal proceedings comes with a panoply of greater protections when compared with seeking asylum in expedited removal. *See Immigrant Defenders Law Center v. Mayorkas*, 2023 WL 3149243, at *29 (C.D. Cal. Mar. 15, 2023) ("Individuals in regular removal proceedings enjoy far more robust due process protections [than those in expedited removal] because Congress has conferred additional statutory rights on them.").

67.    Here, Y-Z-L-H- was not advised by DHS that they sought to terminate his proceedings in order to place him in expedited removal, depriving him of the bundle of rights associated with his pending asylum application. Because of his legal interest in his pending asylum application, this violated due process. *See generally Mathews v. Eldridge,* 424 U.S. 319, 333 (1976) (requiring notice and an opportunity to be heard before deprivation of a legally protected interest).

### COUNT TWO
### Violation of the Administrative Procedure Act – 5 U.S.C. § 706(2)(A)
### Not in Accordance with Law and in Excess of Statutory Authority
### Unlawful Detention

68.    Petitioner restates and realleges all paragraphs as if fully set forth here.

69.    Under the APA, a court shall "hold unlawful and set aside agency action" that is an abuse of discretion. 5 U.S.C. § 706(2)(A).

70.    An action is an abuse of discretion if the agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 658 (2007) (*quoting Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

71.    To survive an APA challenge, the agency must articulate "a satisfactory explanation" for its action, "including a rational connection between the facts found and the choice made." *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2569 (2019) (citation omitted).

72.    By categorically revoking Petitioner's parole and transferring him away from the district without consideration of his individualized facts and circumstances, Respondents have violated the APA.

73.    Respondents have made no finding that Petitioner is a danger to the community.

74.    Respondents have made no finding that Petitioner is a flight risk because, in fact, he was arrested while appearing at his immigration proceedings.

75.    By detaining and transferring the Petitioner categorically, Respondents have further abused their discretion because there have been no changes to his facts or circumstances since the agency made its initial determination to parole him into the United States that support detention.

76.    Respondents have already considered Petitioner's facts and circumstances and determined that he was not a flight risk or danger to the community. There have been no changes to the facts that justify this revocation of his parole.

### COUNT THREE
**Violation of Fifth Amendment Right to Due Process**
**Illegal Retroactive Application of Expedited Removal Designation**

77.    Petitioner restates and realleges all paragraphs as if fully set forth here.

78.    Administrative rules "will not be construed to have retroactive effect unless their language requires this result." *Landgraf v. USI Film Products*, 511 U.S. 244, 272 (1994). When a "new provision attaches new legal consequences to events completed before its enactment" the new provision is not retroactive unless it is unmistakably clear.

79.    Applying the January 2025 expedited removal designation to Petitioner's July 2023 entry to the United States to seek asylum would attach new legal consequences including the loss of significant rights related to his right to seek asylum.

80.    The January 2025 designation does not unmistakably apply to individuals who entered the United States prior to its effective date.

81.    Accordingly, Respondents are unlawfully subjecting him to expedited removal.

### COUNT FOUR
**Violation of the Administrative Procedure Act – 5 U.S.C. § 706(2)(A)**
**Not in Accordance with Law and in Excess of Statutory Authority**
**Violation of 8 C.F.R. § 239.2(c)**

82.    Petitioner restates and realleges all paragraphs as if fully set forth here.

83.    Under the APA, a court "shall . . . hold unlawful . . . agency action" that is "not in accordance with law;" "contrary to constitutional right;" "in excess of statutory jurisdiction,

PETITION FOR WRIT OF HABEAS CORPUS
Page 15

authority, or limitations;" or "without observance of procedure required by law." 5 U.S.C. § 706(2)(A)-(D).

84.    Once a removal proceeding has been initiated, regulations allow for the proceedings to be dismissed for a reason set forth at 8 C.F.R. § 239.2(a).

85.    The initiation of expedited removal proceedings is not an enumerated ground upon which a removal proceeding may be dismissed.

86.    It is a well-established administrative principle that "agency action taken without lawful authority is at least voidable, if not void *ab initio*." *L.M.-M. v. Cuccinelli*, 442 F. Supp. 3d 1, 35 (D.D.C. 2020), citing *SW General, Inc. v. NLRB*, 796 F.3d 67, 79 (D.C. Cir. 2015); *see also Hooks v. Kitsap Tenant Support Servs., Inc.*, 816 F.3d 550, 555 (9th Cir. 2016) (invalidating agency action because it was taken by unauthorized official).

87.    On information and belief, Respondents have dismissed Petitioner's removal proceedings because of their intent to eliminate the due process rights available to Petitioner in removal proceedings under section 240 of the Immigration and Nationality Act.

88.    Because Petitioner's dismissal of section 240 proceedings was not made in furtherance of an enumerated reason set forth in the regulations, Respondents' use of the January 2025 expedited removal designation is unlawful.

### COUNT FIVE
**Violation of the Administrative Procedure Act – 5 U.S.C. § 706(2)(A)**
**Not in Accordance with Law and in Excess of Statutory Authority**
**Violation of 8 U.S.C. § 1225(b)**

89.    Petitioner restates and realleges all paragraphs as if fully set forth here.

90.    Under the APA, a court "shall . . . hold unlawful . . . agency action" that is "not in accordance with law;" "contrary to constitutional right;" "in excess of statutory jurisdiction,

authority, or limitations;" or "without observance of procedure required by law." 5 U.S.C. § 706(2)(A)-(D).

91.     Congress has made it clear that the expedited removal statute does not apply and may not be applied to individuals who were "paroled" into the United States. 8 U.S.C. § 1225(b).

92.     Y-Z-L-H- is not amenable to nor may he be subjected to expedited removal because he is not "arriving in the United States" as he has been physical present for nearly two years.

93.     Y-Z-L-H- is not amenable to nor may he be subjected to expedited removal under the January 2025 designation because he was paroled. 8 U.S.C. § 1225(b)(1)(A)(iii)(II) (limiting expedited removal designations only to individuals who "has not been admitted or paroled into the United States).

94.     Because Petitioner is not subject to the designation, Respondents' use of the January 2025 designation to detain and transfer him is unlawful.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully requests this Court to grant the following:

(1) Assume jurisdiction over this matter;

(2) Issue an Order to Show Cause ordering Respondents to show cause why this Petition should not be granted within three days;

(3) Declare that Petitioner's re-detention without an individualized determination violates the Due Process Clause of the Fifth Amendment;

(4) Declare that Respondents' application of the January 2025 Designation to Petitioner is illegal;

(5) Issue a Writ of Habeas Corpus ordering Respondents to release Petitioner

from custody;

(6) Issue an Order prohibiting the Respondents from transferring Petitioner from

the district without the court's approval;

(7) Award Petitioner attorney's fees and costs under the Equal Access to Justice

Act, and on any other basis justified under law; and

(8) Grant any further relief this Court deems just and proper.


Dated:   June  5, 2025.                              */s/ Stephen W Manning*

                                                     _____

                                                     STEPHEN W. MANNING, OSB # 013373
                                                     stephen@innovationlawlab.org
                                                     JORDAN CUNNINGS, OSB # 182928
                                                     jordan@innovationlawlab.org
                                                     INNOVATION LAW LAB
                                                     333 SW 5th Ave., Suite 200
                                                     Portland, OR 97204-1748
                                                     Telephone: +1 503-922-3042

                                                     *Attorneys for Petitioner*